| | | |
|---|---|---|
| SHERRY DENISE TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | 7:18-cv-071-JMH |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| NANCY A. BERRYHILL, ACTING | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY,[1] | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*

Plaintiff Sherry Denise Taylor, one of many past clients of former attorney Eric C. Conn, was the prevailing party in this action pertaining to reconsideration of Social Security benefits. [See DE 17]. Subsequently, Taylor moved for an award of attorney's fees under the Equal Access to Justice Act ("EAJA"). [DE 18]. In response, the Commissioner does not oppose Taylor's motion for attorney's fees, but the Commissioner opposes Taylor's request for an increase in the statutory maximum rate and argues that some of the requested hours are not compensable because they were incurred post remand. [DE 19].

After reviewing the motion for fees and the Commissioner's arguments in opposition, Taylor's motion for attorney's fees under

---

[1] Andrew Saul was sworn in as the Commissioner of Social Security on June 17, 2019. Still, Nancy Berryhill was serving as Acting Commissioner of Social Security when this action was filed.

the EAJA [DE 18] is **GRANTED IN PART** and **DENIED IN PART**. The statutory maximum rate of $125 per hour for attorney's fees is appropriate in this action. Even so, Taylor is entitled to recover 9.1 hours of attorney's fees because the requested fees were recovered in a civil action. As a result, Taylor is entitled to $1,137.50 in attorney's fees as the prevailing party in this action.

## I. Procedural History

Plaintiff Sherry Taylor is one of many individuals affected by the investigation into fraud involving former attorney Eric C. Conn. In May 2015, the Social Security Administration notified Taylor that there was reason to believe fraud was involved in Taylor's initial application for Social Security benefits. Subsequently, Taylor's benefits were terminated.

Then, Taylor initiated this action in federal court seeking review of the Commissioner's decision. [DE 1]. The Commissioner moved for entry of judgment and remand for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). [DE 14]. Taylor did not oppose the motion to remand. [DE 15]. As such, the Court granted judgment in favor of Taylor and ordered that this action be reversed and remanded for further proceedings. [DE 16; DE 17].

Now, Taylor moves for an award of attorney's fees under the EAJA. [DE 18]. The Commissioner has responded [DE 19] and Taylor has replied [DE 20], making this matter ripe for review.

## II. Analysis

In this action, the Commissioner agrees that Taylor is entitled to an award of attorney's fees under the EAJA. But the Commissioner opposes the requested amount of EAJA fees for two reasons. First, the Commissioner opposes Taylor's requested $203 hourly rate because it is above the statutory maximum rate. Second, the Commissioner contends that some of the fees Taylor requests are not compensable under the EAJA because they were incurred after remand. These arguments are considered below.

### A. Increase in Statutory Rate

The EAJA allows prevailing parties in certain civil actions brought against the United States to recover fees and other expenses. *See* 28 U.S.C. § 2412(d)(1)(A). The Act defines "fees and other expenses" and explains that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A).

The EAJA constitutes a waiver of sovereign immunity and should be strictly construed. *See Ardestani v. INS*, 502 U.S. 129, 137-38 (1991); *Turner v. Astrue*, 790 F. Supp. 2d 584, 585 (E.D. Ky. 2011). Still, while the "statutory rate is a ceiling and not a floor," *Chipman v. Sec'y of Health & Human Servs.*, 781 F.2d 545,

547 (6th Cir. 1986), the Act allows for upward adjustments from the statutory rate. *Begley v. Sec'y of Health & Human Servs.*, 966 F.2d 196, 200 (6th Cir. 1992).

When considering a request for an increase in the statutory hourly fee, courts must "carefully consider, rather than rubber stamp, requests for adjusted fee awards based on inflation." *Id.* Such increases are largely within the discretion of the district court and the Sixth Circuit has "neither precluded cost of living adjustments in appropriate cases, nor interfered with the authority of the district courts to decide such matters within their discretion." *Id.*

The plaintiff bears the burden of producing evidence to support an increase in the statutory rate. *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 450 (6th Cir. 2009). To justify an increase, "[p]laintiffs must 'produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

Here, Taylor's attorney, Evan Barret Smith,[2] has submitted various affidavits and advances multiple arguments in support of the motion for an increase in the statutory rate for attorney's fees.

For instance, Smith has submitted an affidavit reflecting his education, experience, and reputation [DE 18-2]. Smith's affidavit demonstrates that he has a distinguished educational and professional background. Currently, Smith works as a staff attorney at Appalachian Citizens' Law Center where his practice focuses primarily on federal black lung benefits.

Smith also submitted affidavits from several attorneys stating that the market rate for legal services of this kind are well above the statutory rate of $125 per hour. All four attorneys who submitted affidavits opined that the market rate for Social Security cases in the Eastern District of Kentucky is higher than the statutory rate of $125 per hour.

Furthermore, Smith has submitted economic and market data in support of the motion. First, Smith used the United States Bureau of Labor's Consumer Price index to determine that $125 in 1996 was equivalent to $203.02 in October 2018 dollars. [DE 18 at 5, Pg ID 101]. Second, Smith stated that, based on market rates, the median

---

[2] Taylor's motion for attorney's fees states that co-counsel, Dennis James Keenan, waives EAJA fees for his work in this action as a matter of billing judgment. [DE 18 at 6, Pg ID 102].

5

hourly rate for a consumer law attorney in eastern Kentucky is $325. [*Id.* at 4, Pg ID 100].

This evidence presents a persuasive case for variance from the statutory maximum fee. Still, the procedural history of this case does not support an increase of the statutory maximum rate.

The complaint in this action was filed on June 25, 2018. [DE 1]. Then, the case was stayed based on pending appeals before the United States Court of Appeal for the Sixth Circuit. [DE 10]. But the stay was short lived. Taylor filed a response in opposition to the motion for stay and a motion for reconsideration. [DE 12]. Subsequently, on October 10, 2018, the Commissioner moved to have this action remanded to the agency for further proceedings, which was supported by Taylor. [DE 14; DE 15]. As a result, the Court granted judgment in favor of Taylor and remanded the case to SSA. [DE 17].

Thus, while Taylor was a prevailing party in this litigation, this case did not present complex legal issues or require many hours of legal work, unlike some of the other Conn cases. In fact, Smith's itemized time logs indicate that he spent a total of 9.1 hours on this matter. [DE 18-1]. Taylor's motion explains that "this small number of hours . . . was made possible by using previous pleadings that [Smith] had drafted for other cases and by reaching out to the Social Security Administration's lawyers to explain informally that Ms. Taylor's case was different than the

6

cases of most of the former Eric Conn clients." [DE 18 at 6, Pg ID 102]. No dispositive motions were filed on Taylor's behalf and the case was remanded because the Commissioner moved for remand.

As such, Smith provided effective and expedient representation for Taylor in this action, but relatively little legal work was required to reach the result since Smith used previous pleadings drafted in similar cases. Ultimately, this is not an appropriate case to increase the statutory maximum rate because this case did not involve complex legal analysis or require substantial legal work to receive a favorable outcome for Taylor.

Additionally, the weight of authority in the Eastern District of Kentucky supports using the $125 statutory rate in most Social Security cases. Smith has cited multiple cases in which courts in the Eastern District of Kentucky have increased the statutory maximum fee. [DE 18 at 4, Pg ID 100]. Even so, as the Commissioner points out, most of the cases cited by Smith are not Social Security cases. In the Eastern District of Kentucky, the $125 statutory maximum rate is typically awarded in Social Security cases. *See, e.g.*, *Gibson v. Colvin*, No. 2:12-cv-131-DCR, 2013 WL 6191754, at *2-3 (E.D. Ky. Nov. 26, 2013); Roberts v. Berryhill, No. 5:12-cv-139-KKC, 2017 WL 2311870, at *2-3 (E.D. Ky. May 26, 2017). Thus, the weight of authority in this district opposes increasing the statutory maximum fee.

7

Of course, the Court acknowledges that in some cases the Eastern District of Kentucky has allowed an increase in the statutory maximum fee in Social Security cases. For instance, Smith points the Court to *Taylor v. Berryhill*, No. 16-cv-195-DLB, 2017 WL 2381285 (E.D. Ky. June 1, 2017), a case where Judge David Bunning awarded a rate of $195 per hour. But *Taylor* does little to support Smith's claim for an increase in statutory fees. It appears that Smith requested a $195 rate in *Taylor* and that the Commissioner did not oppose the requested statutory increase. As a result, Judge Bunning understandably did not engage in an analysis of whether an increase in the statutory maximum was warranted because the request for fees was unopposed. Thus, it is true that in Taylor the court awarded fees based on a rate of $195 per hour, but that case does not support an increase in the statutory maximum fee in other cases, especially those where the requested increase in the statutory maximum of opposed.

That is not to say that some of the attorneys representing former Conn clients are not entitled to an increase in the statutory maximum fee. The Court is aware that some of the actions pertaining to former Conn clients involved complex legal issues, multiple filings, and exhaustive appeals. As a result, some of the attorneys representing Conn clients may be entitled to an increase in the statutory maximum fee based on the complexity of the actions and other relevant factors.

Still, attorneys are not necessarily entitled to an increase in the statutory maximum fee just because they represented former Conn clients. Any increase in the statutory maximum fee must be considered on a case-by-case basis. For instance, an attorney is likely not entitled to an increase in the statutory maximum fee where they represented their client by primarily using other pleadings and filings from other Conn cases or copied and pasted a filing drafted by another attorney in similar matters. Attorneys may not simply submit the work of other attorneys or work done in other cases to support an increased fee. Instead, to justify an increase in the statutory maximum, attorneys representing Conn clients must demonstrate that *the specific case where they provided legal representation required complex analyses and substantial legal work that justifies an increase in the statutory maximum*.

Again, since the EAJA constitutes a waiver of sovereign immunity, it must be strictly construed. *See Ardestani*, 502 U.S. at 137-38. In some limited circumstances, the EAJA allows for upward adjustments from the maximum statutory rate. Still, the Sixth Circuit has cautioned that the "statutory rate is a ceiling and not a floor." *Chipman*, 781 F.2d at 547.

Additionally, the maximum rate set in the EAJA was set by Congress and, as a result, general increases in the maximum rate are most appropriately increased by an act of Congress. While the Act allows for an upward variance from the statutory maximum rate

9

if "the court determines that an increase in cost of living or a special factor . . . justifies a higher fee," 28 U.S.C. § 2412(d)(2)(A), Congress passed the EAJA without including a mandatory or automatic periodic adjustment to the statutory maximum rate based on cost of living increases or inflation. Of course, attorneys practicing in Social Security cases may present evidence that an increase is justified based on the specific facts of the case. Still, in the EAJA, Congress has instructed courts that, in most circumstances, "attorney fees *shall not be awarded in excess of $125 per hour*." 28 U.S.C. § 2412(d)(2)(A) (emphasis added). Thus, to the extent that some feel that the statutory fee in the EAJA falls below the prevailing market rate for similar services in all circumstances or that the rate is so low that it prevents Social Security claimants from access to adequate legal representation, they should seek relief from their congressional representatives, not this Court.

Here, an adjustment from the statutory maximum rate is not warranted. This action did not involve complex legal analysis or substantial legal work to reach a favorable outcome. Additionally, the weight of authority in this district supports the $125 statutory rate. As such, the Court will use the $125 statutory maximum rate in this matter.

## B. Amount of Compensable Hours

One final consideration remains. May the Plaintiff recover attorney's fees for time incurred after the Court's entry of judgment reversing and remanding the action under sentence four but before the appeal period has run?

The Commissioner argues that 1.4 hours reported on the time sheet [DE 18-1] are not compensable because they were incurred after remand to the agency. [DE 19 at 5, Pg ID 127]. Alternatively, Taylor contends that the reported time was incurred after the entry of judgment but before the time period for filing a motion to reconsider under Rule 59(e) or Rule 60—meaning that the time was incurred in a "civil action" and is compensable under the Act. [DE 20 at 7, Pg ID 136].

EAJA attorney's fees may be awarded "to a prevailing party . . . incurred by that party in a civil action . . . including proceedings for judicial review of agency action." 28 U.S.C. § 2412(d)(1)(A).

Thus, the Court must determine the meaning of some of the terms within the Act to determine if the reported time at issue is compensable. The language of the statute is a good place to start, and the plain language of the statute is also the ending point if the plain meaning of the statutory language is clear. *See, e.g.*, *United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000) (citing *United States v. Rob Pair Enters., Inc.*, 489 U.S. 235, 241(1989)).

11

The EAJA says that a "'civil action brought by or against the United States' includes an appeal by a party, other than the United States, from a decision of a contracting officer rendered pursuant to a disputes clause in a contract with the Government or pursuant to chapter 71 of title 41." 28 U.S.C. § 2412(d)(2)(E). But that definition provides little help in this situation, since this matter does not involved an appeal from a decision of a contracting officer rendered pursuant to chapter 71 of title 41. Thus, the Court must look to the plain meaning of "civil action" as used in the statute.

Black's Law Dictionary defines a "civil action" as "an action brought to enforce, redress, or protect a private or civil right; a noncriminal litigation." *Civil Action*, BLACK'S LAW DICTIONARY (11th ed. 2019). "Action" is defined in part as "a civil or criminal judicial proceeding." *Action*, BLACK'S LAW DICTIONARY (11th ed. 2019).

Still, the dispositive question here appears to be when does a "civil action" terminate? One authority says that an action "is defined to be any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree. *The action is said to terminate at judgment.*" 1 Morris M. Estee, *Estee's Pleadings, Practice, and Forms* § 3, at 1 (Carter P. Pomeroy ed., 3d ed. 1885) (emphasis added).

12

But that does not necessarily answer the question before the Court. One could reasonably argue that the civil action terminates upon entry of a final judgment in the record. Alternatively, one could also reasonably contend that the civil action terminates once a final judgment has been entered in the record and the time for appealing that judgment has expired.

Here, a review of the statute and analogous case law indicates that Taylor has the better argument on this point. The most logical conclusion is that the "civil action" terminates after entry of judgment in the record and the appeal period has run.

First, back to the language of the statute. The EAJA says that "'final judgment' means a judgment that is final *and not appealable*." 28 U.S.C. § 2412(d)(2)(G) (emphasis added). Thus, the plain language of the statute says that a judgment is not final in this context until it is not appealable.

Second, this conclusion is supported by the United States Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292 (1993). In *Schaefer*, the Supreme Court considered the proper timing for moving for attorney's fees under the EAJA in Social Security cases. In making that determination, the Supreme Court explained that sentence four remand orders constitute final judgments and that "[i]n sentence four cases, the filing period begins *after the final judgment . . . is entered by the court and the appeal period has run*." *Schaefer*, 509 U.S. at 298 (quoting

*Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)). This suggests that, while remand under sentence four divests courts of jurisdiction and ultimately terminates the civil action, that the civil action does not formally terminate until entry of a final judgment and the appeal period has run.

Third, and finally, this interpretation is supported by the procedural history of amendments to the EAJA and the congressional record. Before the 1985 amendments to the EAJA, a split in federal authority existed on when a judgment was to be regarded as final for the purposes of the EAJA. The Ninth Circuit held that a judgment was final and the EAJA filing period began to run upon entry of the judgment in the record. *McQuiston v. Marsh*, 707 F.2d 1082, 1085 (9th Cir. 1983). But the Seventh Circuit held that the EAJA period began after the time for appeal of the judgment had expired. *McDonald v. Schweiker*, 726 F.2d 311, 314 (7th Cir. 1983). Congress addressed the split in federal authority and adopted the Seventh Circuit's approach in *McDonald*. *See Melkonyan*, 501 U.S. at 96.

The congressional record reflects Congress's resolution of this split in federal law. "The Committee believes that the interpretation of the court in [*McDonald* ] is the correct one." S. Rep. No. 98-586, p. 16 (1984). "The term 'final judgment' has been clarified to mean a judgment the time to appeal which has expired for all parties." H.R. Rep. No. 99-120, p. 18 (1985).

14

As a result, it follows that, if a "civil action" terminates at judgment, and a "final judgment" for the purposes of the EAJA means a judgment for which the time to appeal has expired for all parties, that a civil action terminates in the EAJA context once a judgment has been entered and the time to appeal had expired for all parties.

Therefore, in this case, Taylor may recover reasonable attorney's fees incurred after entry of judgment in the record but before the time to appeal the judgment ran. The Court entered judgment for Taylor on October 23, 2018. [DE 17]. Since the Commissioner of Social Security was a party, the notice of appeal had to be filed within sixty days of entry of the judgment. See Fed. R. App. P. 4(a)(1)(B). Thus, since all fees requested in the initial motion for fees were incurred on or before December 11, 2018, Taylor may recover attorney's fees for the entire 9.1 requested in the initial motion for fees.

Even so, Taylor requests 4 additional hours for the time it took counsel to reply in support of the motion for fees. In support of this request, Taylor cites *Comm'r I.N.S. v. Jean*, 496 U.S. 154 (1990). *Jean* stands for the proposition that an award of fees under the EAJA for litigation based on the fee award itself does not require a finding that the government's position in fee litigation is not substantially justified. *See id.* at 162-66.

15

Taylor is correct that prevailing parties may recover attorney's fees arising out of fee litigation under the EAJA. But *Jean* does not necessarily stand for the proposition that a prevailing party in Social Security litigation may recover attorney's fees for time spent on fee litigation after the civil action terminates.

The EAJA favors treating a case like an inclusive whole. *See Jean*, 496 U.S. at 161-62. Still, this instruction must be read in conjunction with the EAJA's statutory requirement that only fees recovered in a civil action are compensable under the Act. *See* 28 U.S.C. § 2412(d)(1)(A). The proposition announced in *Jean* and the statutory requirements in the EAJA are not mutually exclusive. Read together, the two maxims stand for the joint proposition that prevailing parties in Social Security litigation may recover fees pertaining to recovering EAJA fees, in other words, fees on fees; but fees arising out of fee litigation may not be incurred once the civil action has terminated.

Here, Taylor has failed to demonstrate that the requested four hours spent replying in support of the motion for fees were incurred as part of the civil action. Taylor's reply was filed on January 16, 2019. [DE 20]. As a result, it appears that this time was incurred after the civil action terminated and is not compensable under the EAJA.

### C. Calculating Fees

Having completed the heavy lifting, calculating the appropriate fee in this matter is simple enough. Taylor has reported 9.1 hours of compensable attorney's fees in this action. After multiplying the number of hours by the statutory rate of $125 per hour, Taylor is entitled to $1,137.50 in attorney's fees under the EAJA.

Of course, EAJA fees must be made payable directly to the Plaintiff as the prevailing party. *See Astrue v. Ratliff*, 560 U.S. 586, 595-98 (2010); *Kerr for Kerr v. Comm'r of Soc. Sec.*, 874 F.3d 926, 934 (6th Cir. 2017).

### III. Conclusion

Accordingly, having reviewed the motion for EAJA attorney's fees and addressed the parties' substantive legal arguments, **IT IS ORDERED** as follows:

(1) Seeing as the Commissioner's position was not substantially justified and there are no special circumstances before the Court that make an award unjust, Defendant **SHALL** pay Plaintiff a total of $1,137.50 in attorney's fees;

(2) The EAJA fees are subject to offset under the Treasury Offset Program, 31 U.S.C. § 3716(c)(3)(B); and

(3) The award of attorney's fees must be made payable to the Plaintiff, Sherry Denise Taylor.

This the 12th day of July, 2019.



Signed By:
*__Joseph M. Hood__*
**Senior U.S. District Judge**